**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

2:26-cv-446-JRO-MJD

FILED
06/26/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

WILLIAM CODY FLETCHER,
Plaintiff,

v.

ORANGE COUNTY, INDIANA;
ORANGE COUNTY BOARD OF COMMISSIONERS;
MARSHAL NOBLE, Commissioner, individually and in official capacity;
RICHARD DIXON, Commissioner, individually and in official capacity;
MARILYN TUCKER FULLEN, Orange County Attorney, individually and in official capacity;
JUDGE STEVEN OWEN, individually and in official capacity;
JUDGE MICHAEL CLOUD, individually and in official capacity;
DEPUTY CHRISTOPHER ALLEN HUBBARD, individually and in official capacity;
DEPUTY RYAN DUCKETT, individually and in official capacity;
ORANGE COUNTY SHERIFF, individually and in official capacity;
CASEY LOWRY, individually;
TRAVELERS INSURANCE COMPANY,

Defendants.

Case No.: _______________

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS**

**42 U.S.C. §§ 1983, 1985 — JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

Plaintiff William Cody Fletcher, appearing pro se, brings this action against Orange County, Indiana, its officials, employees, and agents for a systematic, coordinated, and deliberate pattern of constitutional violations arising from two related but independently actionable sets of facts: (1) Plaintiff's tort claim stemming from a September 16, 2025 motorcycle accident caused by dangerous conditions on a federally-funded Orange County road construction project; and (2) a coordinated pattern of retaliation, obstruction, denial of court access, fraud, and conspiracy following Plaintiff's assertion of his legal rights.

This is not a case of administrative error or bureaucratic slowness. This is a case of coordinated governmental misconduct by a family whose reach extends from the Orange County courthouse to the United States Senate. Marilyn Tucker Fullen, Orange County Attorney, is the sister of Jennifer Tucker Young, wife of United States Senator Todd Young of Indiana. Jennifer Tucker Young served as Orange County Prosecutor before her marriage. Todd Young entered Orange County as deputy prosecutor under Jennifer Tucker, remaining approximately one year before successfully running for the United States House of Representatives and subsequently becoming U.S. Senator from Indiana — a political career that originated in Orange County under the Tucker family's prosecutorial authority. Jennifer Tucker Young is the niece of former United States Vice President Dan Quayle, whose wife Marilyn Tucker shares the Tucker family name. Marilyn Tucker Fullen's third-generation hold on the county attorney position, her family's prior control of the prosecutor's office, and their connections to a sitting U.S. Senator and former Vice President are not coincidental — they are the product of institutional capture of a county government by a single family with the political insulation to act without accountability.

## JURISDICTION AND VENUE

1. 1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. §§ 1983 and 1985.
2. 2. Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this complaint occurred in Orange County, Indiana.
3. 3. Plaintiff brings this action in federal court because the Orange County Circuit Court cannot provide impartial adjudication of claims against Orange County. Judge Steven Owen is a state employee presiding over matters in which the county is the opposing party. Owen has an institutional interest in the county not paying out money. The courthouse filing process has been captured by Defendant Tucker. Asking a state court judge operating within a captured courthouse to rule against the governmental entity that employs him creates an inherent structural conflict that denies Plaintiff due process.

## PARTIES

4. 4. Plaintiff William Cody Fletcher is a citizen of the United States residing at 4112 N. County Rd 625 W, West Baden Springs, IN 47469, phone (812) 788-0332.

5. 5. Defendant Orange County, Indiana is a political subdivision of the State of Indiana.

6. 6. Defendant Orange County Board of Commissioners is the governing body of Orange County responsible for county policy, contracts, and personnel.

7. 7. Defendant Marshal Noble is an Orange County Commissioner sued individually and in his official capacity. Noble served as a town law enforcement officer in French Lick, Indiana for approximately ten years before becoming commissioner, establishing personal professional relationships throughout Orange County law enforcement. Noble's ex-wife serves as head supervisor of the Paoli DCS office. Noble and his ex-wife maintain regular contact. Noble has failed to disclose this conflict and has not recused himself from matters involving DCS, the sheriff's department, or Plaintiff's complaints — despite his personal relationships with both.

8. 8. Defendant Richard Dixon is an Orange County Commissioner sued individually and in his official capacity. Dixon's entire professional career has been in law enforcement in this region: he served as a deputy sheriff, then as Orange County Sheriff, then as a Paoli police officer, then held a specially created law enforcement position in Orleans, Indiana — a town with no prior chief of police position and negligible crime — for approximately ten years, collecting retirement benefits from each position before becoming commissioner. Dixon has personal professional relationships spanning decades with Orange County Sheriff's Department personnel including Deputies Hubbard and Duckett and the Sheriff. This career history establishes that Dixon's failure to take corrective action regarding the retaliatory impoundment and promotion of the deputies is not ignorance — it is deliberate protection of officers he has known personally throughout his career.

9. 9. Defendant Marilyn Tucker Fullen, Bar #26929-49, is the Orange County Attorney operating through Tucker and Tucker P.C. in Paoli, Indiana, located at 188 S. Court St., Paoli, IN 47454. Tucker and Tucker P.C. is a multi-generational family firm whose members have held the Orange County Attorney position for three generations. Marilyn Tucker Fullen also represents the Town of Paoli. A Tucker family member serves as insurance intermediary between Orange County and Travelers Insurance. Tucker and Tucker P.C. is connected to United States Senator Todd Young, whose wife Jennifer Tucker Young served as Orange County Prosecutor before their marriage. Todd Young entered Orange County politics as deputy prosecutor under Jennifer Tucker before running for the U.S. House of Representatives and subsequently the U.S. Senate. Jennifer Tucker Young is the niece of former United States Vice President Dan Quayle. Critically — and most significantly — Marilyn Tucker Fullen personally and simultaneously serves as Orange County Attorney AND as Indiana DCS litigation counsel. She is the same individual attorney on both sides. This is documented in public court records including Perry County Circuit Court case 62C01-2406-JC-000156, where she appears personally under Bar #26929-49 as Attorney for Indiana Department of Child Services at 188 S. Court St., Paoli, IN 47454 — the identical address as her county attorney office. This is not merely a firm-level conflict of interest — it is the same attorney personally representing both Orange County and its insurance interests AND the state DCS agency

that appears before Orange County Circuit Court Judge Owen. Tucker and Tucker P.C. also represents Springs Valley Community School Corporation as documented in Indiana Court of Appeals case 93A02-1311-EX-949. Marilyn Tucker Fullen is sued individually and in her official capacity.

10. 10. Defendant Judge Steven Owen is a judge of the Orange County Circuit Court, sued individually and in his official capacity for acts taken in clear absence of jurisdiction, in violation of his constitutional oath, and in coordination with adverse parties against Plaintiff. Prior to his election to the bench in 2016, Owen served as Chief Deputy Prosecuting Attorney for Floyd County, Indiana for fourteen years. Owen's entire legal career prior to becoming a judge was spent as a state prosecutor — he has never represented a private citizen against the state. His professional identity, institutional relationships, and career were built entirely on the prosecutorial side of state government, making his structural bias toward state actors not merely an appearance but a product of his entire professional background.

11. 11. Defendant Judge Michael Cloud is a fill-in judge of the Orange County Circuit Court who refused to rule on Plaintiff's pending fee waiver application, violating his judicial oath and Indiana Constitution Article I, Section 12.

12. 12. Defendant Deputy Christopher Allen Hubbard is a deputy with the Orange County Sheriff's Department, sued individually and in his official capacity.

13. 13. Defendant Deputy Ryan Duckett is a deputy with the Orange County Sheriff's Department, sued individually and in his official capacity.

14. 14. Defendant Orange County Sheriff is the head of the Orange County Sheriff's Department, sued individually and in his official capacity for deliberate indifference to constitutional violations by his deputies and for ratifying their conduct through promotion.

15. 15. Defendant Casey Lowry is a claims adjuster employed by Travelers Insurance Company, sued individually for fraud and intentional misrepresentation.

16. 16. Defendant Travelers Insurance Company is an insurance company providing coverage to Orange County, Indiana, and is a named party to the conspiracy alleged herein.

## FACTUAL ALLEGATIONS

## I. THE TUCKER FAMILY — INSTITUTIONAL CAPTURE OF ORANGE COUNTY

17. 17. Tucker and Tucker P.C., located at 188 S. Court St., Paoli, Indiana, has held the Orange County Attorney position for three generations. Marilyn Tucker Fullen currently holds this position.

18. 18. Marilyn Tucker Fullen's sister, Jennifer Tucker Young, served as Orange County Prosecutor. Todd Young entered Orange County as deputy prosecutor under Jennifer Tucker, remaining approximately one year before successfully running for the United States House of Representatives. His political career — from deputy prosecutor to U.S. Representative to U.S. Senator — originated in Orange County under the Tucker family's prosecutorial authority.

19. 19. Jennifer Tucker Young is the niece of former United States Vice President Dan Quayle, whose wife Marilyn Tucker Quayle shares the Tucker family name.

20. 20. A Tucker family member serves as insurance intermediary between Orange County and Travelers Insurance Company, placing the Tucker family at the nexus of the county's governmental operations and its insurance coverage.

21. 21. Tucker and Tucker P.C. simultaneously represents Indiana DCS in litigation across multiple Indiana counties. This is documented in public court records including Perry County Circuit Court case 62C01-2406-JC-000156, where firm member Marilyn Tucker Fullen, Bar #26929-49, appears as Attorney for Indiana Department of Child Services at the same Paoli address. Tucker and Tucker P.C. is also documented as Orange County counsel in Indiana Court of Appeals case 93A02-1403-EX-144, and as counsel for Springs Valley Community School Corporation in Indiana Court of Appeals case 93A02-1311-EX-949.

22. 22. Tucker and Tucker P.C. therefore simultaneously represents Orange County government, Indiana DCS in litigation appearing in Orange County Circuit Court before Judge Owen, the Town of Paoli, and Springs Valley Community School Corporation — the entire governmental apparatus of Orange County — making impartial governance impossible and creating irreconcilable conflicts of interest in every DCS matter before Judge Owen.

23. 23. Commissioner Noble served as a French Lick town law enforcement officer for approximately ten years before becoming commissioner, establishing personal professional relationships throughout Orange County law enforcement. Noble's undisclosed conflict through his ex-wife's DCS supervisory position compounds this institutional capture.

24. 24. Commissioner Dixon's entire career was in law enforcement in this region — deputy sheriff, Orange County Sheriff, Paoli police officer, and a specially created chief-equivalent position in Orleans, Indiana for approximately ten years collecting retirement benefits from each position. Dixon has personal professional relationships spanning decades with every law enforcement officer named in this complaint. His failure to act on documented deputy misconduct is deliberate protection of officers he has known personally throughout his career.

25. 25. Judge Owen served as Chief Deputy Prosecuting Attorney for Floyd County, Indiana for fourteen years before his election to the bench in 2016. His entire legal career was built on the prosecutorial side of state government. He has never represented a private citizen against the state. His institutional bias toward state actors is not merely an appearance — it is the product of his entire professional background.

26. 26. This institutional structure — a family firm controlling legal representation of every governmental entity in the county, commissioners with lifetime law enforcement relationships, and a judge whose entire career was spent as a state prosecutor — constitutes the coordinated institutional capture underlying every violation documented in this complaint.

## II. THE ROAD ACCIDENT, TORT CLAIM, AND FEDERAL GRANT LIABILITY

27. 22. On September 16, 2025, Plaintiff was operating a motorcycle on Log Creek Road in Paoli, Indiana when he encountered dangerous road conditions created by an Orange County road construction project performed by Calcar Paving Inc. under contract with Orange County.

28. 23. The road construction project was funded through a federal grant of approximately $1,600,000 received by Orange County through the State of Indiana. The grant agreement required Orange County to comply with federal construction safety standards and regulations, to supervise the subcontractor's work, and to submit regular compliance reports to the State of Indiana. The grant agreement further provides that upon a finding of violation of its terms, Orange County must repay the full $1,600,000 and becomes ineligible for federal grants for two years.

29. 24. Orange County failed to include federal safety standards and regulations in its contract with subcontractor Calcar Paving Inc. This failure constitutes Orange County's independent negligence and breach of its grant obligations, separate from any subcontractor fault.

30. 25. Orange County retained authority under the subcontractor contract to oversee the project and shut it down if necessary. Orange County and the State of Indiana both received regular compliance reports on the project. The dangerous conditions on Log Creek Road should have been identified and corrected through this supervisory process.

31. 26. A subcontractor admitted fault for the dangerous conditions. As a direct result, Plaintiff suffered: permanent nerve and tendon damage to his finger rendering it unable to extend past halfway; rotator cuff damage potentially requiring surgery; vehicle property damage of approximately $10,000; lost employment and income; reduced future earning capacity; reputational damage limiting future employment in Orange County; and ongoing medical expenses.

32. 27. Plaintiff previously settled with Bitco General Insurance and Cave Quarries for $30,000. The release names only Cave Quarries and Bitco General Insurance. Orange County is not named in the release and is not a person, firm, or corporation — it is a governmental political subdivision. The release does not bar any claims against Orange County.

33. 28. On December 19, 2025, Plaintiff properly filed a tort claim with the Orange County Auditor and Board of Commissioners in the amount of $700,000. The claim was stamped and accepted. It was never formally denied within the 90-day statutory period under IC

34-13-3. As of the date of this complaint, approximately 176 days have passed since filing with no valid denial.

## III. THE INSURANCE FRAUD AND BAD FAITH HANDLING

34. 29. On May 18, 2026, on a recorded Travelers Insurance phone line, Defendant Casey Lowry acknowledged that Plaintiff's claim was valid and perfected. Lowry stated he had contacted Bitco and Calcar regarding tender and confirmed Travelers pays first and seeks reimbursement from Bitco independently. Both parties ended the call in mutual agreement on how the claim would be resolved.

35. 30. Lowry promised on three separate occasions over two months to send tender paperwork by mail and email. No paperwork was ever sent.

36. 31. On May 22, 2026, Lowry issued a written denial stating Bitco had refused the tender. Plaintiff contacted Bitco directly. Bitco confirmed they never received an actual tender demand — only a notice that a claim might potentially be tendered. No actual tender was ever made. No tender was ever refused. The denial was based on a fabricated event and is void.

37. 32. On June 8, 2026, Lowry stated in writing that Sumner at Bitco had confirmed receipt of the tender. Plaintiff spoke directly with Sumner, who confirmed no actual tender demand was ever received, directly contradicting Lowry's written representation.

38. 33. Defendant Tucker previously represented to Plaintiff that his reimbursement demand had been forwarded to Travelers Insurance. When Plaintiff contacted Lowry, Lowry had no knowledge of any such demand — establishing the same pattern of Tucker claiming to forward matters to insurance while nothing is actually sent.

## IV. THE RETALIATORY VEHICLE IMPOUNDMENT

39. 34. On a Wednesday evening, Deputy Hubbard parked near Plaintiff's residence and, when Plaintiff approached on foot, threatened to shoot Plaintiff. Hubbard admitted he had deliberately staked out near Plaintiff's home hoping Plaintiff would drive so he could drag him out. Hubbard called backup — four additional officers surrounded Plaintiff with hands on weapons. A second deputy made antagonistic comments about Plaintiff's mental health for approximately two hours.

40. 35. The following evening, Deputy Hubbard spread false statements throughout the community that Plaintiff had come to the deputy's home to threaten his family, constituting defamation.

41. 36. On the Friday following the Wednesday incident, Plaintiff filed a formal criminal complaint with the clerk and prosecutor's office against Deputy Hubbard for the threats.

Plaintiff provided copies to the sheriff's department and served a fee schedule notice for further unlawful stops.

42. 37. Two days after Plaintiff filed the criminal complaint, Deputy Hubbard pulled Plaintiff over stating the reason for the stop was 'because I knew you.' This is not a constitutionally valid basis for a traffic stop.

43. 38. During the stop, Deputy Hubbard: refused Plaintiff's request for a supervisor; refused Plaintiff's request to record; searched Plaintiff's vehicle without consent, warrant, or recognized exception; placed Plaintiff in handcuffs during the search; selected a tow company without Plaintiff's input; impounded Plaintiff's vehicle; issued a citation based on a clerical BMV error already being disputed in court; and left Plaintiff standing on a highway in handcuffs before removing them and driving away.

44. 39. Deputy Ryan Duckett participated in the stop, wrote the wrong vehicle name on the citation, and did not use Plaintiff's full name despite having identification in hand.

45. 40. Plaintiff was without his vehicle for three days at a total cost of approximately $1,750 in tow fees, storage, and consequential damages.

46. 41. The temporal proximity between Plaintiff's criminal complaint (Friday) and Hubbard's retaliatory stop (Sunday), combined with Hubbard's stated reason for the stop, establishes First Amendment retaliation on its face.

47. 42. The Orange County Sheriff reviewed footage of the Wednesday incident but refused to allow Plaintiff to view it. The Sheriff rejected Plaintiff's reasonable offer — a public apology from Hubbard clearing Plaintiff's name in exchange for dropping legal action — without response.

48. 43. Both Deputy Hubbard and Deputy Duckett were subsequently promoted by the Orange County Sheriff's Department, which publicly praised them on social media for showing integrity. This promotion after documented misconduct constitutes institutional ratification of their unconstitutional conduct.

## V. OBSTRUCTION OF REIMBURSEMENT DEMAND

49. 44. Plaintiff filed a formal demand for reimbursement of $1,750 for the illegal impoundment. When Plaintiff attempted to file this demand at the Auditor's office, he was physically escorted out by law enforcement at the direction of county staff.

50. 45. Plaintiff subsequently submitted the demand through the circuit court clerk. The clerk stated she would need to consult with County Attorney Tucker before responding — treating the adverse party as the decision-maker for a neutral ministerial function. When Plaintiff called back the following week, the clerk stated Tucker had forwarded the demand to Travelers Insurance.

51. 46. Plaintiff contacted Travelers adjuster Casey Lowry regarding the forwarded demand. Lowry had no knowledge of any such demand, establishing that Tucker either did not

actually forward the demand or forwarded it and concealed it — the identical pattern established with Plaintiff's original tort claim.

52. 47. The Sheriff, when asked about the reimbursement demand on June 8, 2026, stated Plaintiff would have to sue to obtain reimbursement — a documented refusal to pay a valid damage claim for an illegal impoundment and an admission that the county will not voluntarily satisfy its liability.

## VI. COORDINATED OBSTRUCTION OF COURT ACCESS

53. 48. Court staff, after consulting with Defendant Tucker about how to handle Plaintiff's filings, created a separate stamp used exclusively for Plaintiff's filings. The clerk's office told Plaintiff directly that the new stamp was created specifically for his filings after consulting with Tucker.

54. 49. Plaintiff's filings were systematically routed to Defendant Tucker — the adverse party — prior to docketing. Plaintiff photographed the official court file folder, which contained Post-it notes on the majority of his filings stating 'copy sent to Tucker.' This is direct physical documentary evidence of systematic routing of Plaintiff's filings to opposing counsel before docketing.

55. 50. When Plaintiff or others sought answers from county officials about filing procedures, fees, or reimbursement, staff regularly deferred to Tucker before responding — treating the adverse party as the decision-maker for neutral public functions.

56. 51. Plaintiff submitted five or more public records requests under IC 5-14-3. Not one received a response within the statutory deadline.

57. 52. On June 8, 2026, Judge Owen denied Plaintiff's Application to Proceed Without Payment of Fees with no stated reasoning, no findings of fact, and no legal basis — a single word: 'Denied.' This violated Indiana Constitution Article I, Section 12 which commands that justice be administered freely, without purchase, without denial or delay.

58. 53. Judge Michael Cloud, serving as fill-in judge, refused to rule on Plaintiff's pending fee waiver application, violating his judicial oath and Indiana Constitution Article I, Section 12.

59. 54. Defendants Tucker, Owen, and Lowry all sent automated out-of-office responses indicating return on the identical date — June 8, 2026. Tucker is a private attorney in Paoli. Owen is a local judge. Lowry is an insurance adjuster in Indianapolis. No legitimate explanation exists for these three separate adverse parties to share identical absence dates, constituting circumstantial evidence of coordination.

## VII. STOLEN GOVERNMENT IDENTIFICATION

60. 55. During a December 2025 traffic stop, a law enforcement officer took possession of Plaintiff's government-issued identification. The officer subsequently stated he no longer had the identification.

61. 56. Plaintiff contacted the prosecutor's office to locate the identification. When Plaintiff called, the prosecutor's office immediately stated they did not have it before conducting any investigation — suggesting either prior knowledge of who was calling or deliberate refusal to assist.

62. 57. Plaintiff made multiple requests to the Orange County Sheriff's Department to investigate the missing identification. The Sheriff's Department has taken no meaningful action to locate it.

63. 58. The Sheriff's Department's refusal to investigate the loss of a citizen's government-issued identification by one of their own officers, in the context of the documented pattern of obstruction against Plaintiff, constitutes deliberate indifference and denial of equal protection.

## VIII. STRUCTURAL DUE PROCESS VIOLATION

64. 59. Orange County Circuit Court cannot provide impartial adjudication of Plaintiff's claims against Orange County. Judge Owen is a state employee. Orange County is a governmental entity. Both are part of the same governmental apparatus. The courthouse filing process has been captured by opposing counsel Tucker. This structural conflict is not correctable within the state court system.

## IX. FEDERAL GRANT VIOLATIONS

65. 60. The road construction project that caused Plaintiff's injuries was funded through a $1,600,000 federal grant requiring compliance with federal construction safety standards. Orange County failed to include these requirements in its subcontractor contract, breached its supervisory obligations, and failed to maintain safe conditions on the project site.

66. 61. A federal court judgment finding Orange County liable for constitutional violations in connection with this project may trigger the grant's clawback provision requiring repayment of the full $1,600,000 grant amount and two years of grant ineligibility.

67. 62. The State of Indiana received regular compliance reports from Orange County on this project and failed to ensure compliance with federal grant requirements.

## CLAIMS FOR RELIEF

**COUNT I — 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION**

68. 63. Plaintiff incorporates all preceding paragraphs. Plaintiff exercised his First Amendment right to petition the government by filing a criminal complaint against Deputy Hubbard on Friday. Two days later, the same deputy stopped Plaintiff stating 'because I knew you,' searched his vehicle, impounded it, and left him on the highway in handcuffs. This was direct retaliation for protected First Amendment activity. The subsequent promotion of Deputies Hubbard and Duckett demonstrates institutional ratification.

**COUNT II — 42 U.S.C. § 1983 — FOURTH AMENDMENT VIOLATIONS**

69. 64. Plaintiff incorporates all preceding paragraphs. The traffic stop lacked reasonable suspicion or probable cause. The vehicle search was conducted without consent, warrant, or recognized exception. The impoundment was without legal justification. Deputies Hubbard and Duckett are individually liable.

**COUNT III — 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT — DENIAL OF COURT ACCESS**

70. 65. Plaintiff incorporates all preceding paragraphs. Defendants, through a coordinated pattern including the special stamp, routing filings to Tucker, physical removal from courthouse, arbitrary fee waiver denials by both Owen and Cloud, unanswered public records requests, and the stolen identification, have systematically denied Plaintiff meaningful access to the courts in violation of the Fourteenth Amendment and Indiana Constitution Article I, Section 12.

**COUNT IV — 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT — STRUCTURAL DUE PROCESS**

71. 66. Plaintiff incorporates all preceding paragraphs. A judge who is an employee of the same governmental apparatus being sued cannot provide impartial adjudication. The Tucker family's institutional capture of the courthouse machinery compounds this structural violation. Neither defect is correctable within the state system.

**COUNT V — 42 U.S.C. § 1983 — SHERIFF'S DELIBERATE INDIFFERENCE**

72. 67. Plaintiff incorporates all preceding paragraphs. The Sheriff reviewed footage of Hubbard's misconduct, refused to show it to Plaintiff, rejected a reasonable settlement offer, promoted both Hubbard and Duckett after documented misconduct, refused to investigate the loss of Plaintiff's government identification, and told Plaintiff he would have to sue to recover $1,750 for an illegal impoundment. This constitutes deliberate indifference and supervisor liability under § 1983.

**COUNT VI — 42 U.S.C. § 1985 — CIVIL CONSPIRACY**

73. 68. Plaintiff incorporates all preceding paragraphs. Defendants Tucker, Owen, Lowry, Noble, Hubbard, and the Sheriff, acting in concert, coordinated to deprive Plaintiff of his constitutional rights. Evidence includes: identical coordinated absence dates; Post-it notes routing filings to Tucker; the special stamp created after Tucker consultation; Tucker's repeated false representations that demands were forwarded to insurance; Lowry's fabricated tender refusal; Owen's arbitrary fee waiver denial; Cloud's refusal to rule; and the promotion of Hubbard and Duckett after documented retaliation. The Tucker family's political connections at the federal level establish the institutional basis for this coordinated obstruction.

**COUNT VII — FRAUD AND INTENTIONAL MISREPRESENTATION**

74. 69. Plaintiff incorporates all preceding paragraphs. Lowry acknowledged the claim as valid and perfected on a recorded line, promised tender paperwork three times over two months, never sent it, then denied the claim based on a tender refusal that Bitco confirms never occurred. These representations were knowingly false. Travelers is liable for Lowry's conduct as his employer.

**COUNT VIII — BAD FAITH CLAIMS HANDLING (IC 27-4-1-4.5)**

75. 70. Plaintiff incorporates all preceding paragraphs. Travelers denied a claim its own adjuster acknowledged as valid and perfected, based on a fabricated event, constituting bad faith claims handling under Indiana law.

**COUNT IX — NEGLIGENCE AND PREMISES LIABILITY**

76. 71. Plaintiff incorporates all preceding paragraphs. Orange County created dangerous conditions on Log Creek Road through its federally-funded road construction project, failed to include federal safety requirements in its subcontractor contract, failed to properly supervise the project, and failed to warn the public of hazardous conditions. These failures directly caused Plaintiff's injuries.

**COUNT X — CONFLICT OF INTEREST AND FAILURE TO DISCLOSE**

77. 72. Plaintiff incorporates all preceding paragraphs. Commissioner Noble's undisclosed conflict through his ex-wife's position as DCS head supervisor, combined with his failure to recuse himself from matters affecting Plaintiff, contributed to the coordinated obstruction Plaintiff experienced and violates his duty of impartiality as a public official.

**COUNT XI — DUAL REPRESENTATION CONFLICT OF INTEREST AND PROFESSIONAL MISCONDUCT**

78. 73. Plaintiff incorporates all preceding paragraphs.

79. 74. Defendant Marilyn Tucker Fullen, Bar #26929-49, simultaneously serves as Orange County Attorney and as Indiana DCS litigation counsel — confirmed by her bar number appearing on public court filings in both capacities at the same Paoli address. This dual representation violates Indiana Rules of Professional Conduct Rule 1.7, which prohibits concurrent representation of clients with conflicting interests.

80. 75. Tucker Fullen's dual representation is not merely an ethical violation — it is a constitutional violation in the context of this case. As county attorney, she directed courthouse staff on how to handle Plaintiff's filings, created special procedures targeting Plaintiff, and coordinated the obstruction documented throughout this complaint. As DCS litigation counsel, she has an institutional financial interest in protecting the governmental apparatus Plaintiff is challenging. Her dual role gave her both the motive and the mechanism to coordinate obstruction across multiple governmental entities simultaneously.

81. 76. Tucker Fullen's dual representation of Orange County and Indiana DCS means every DCS case she handles in Orange County Circuit Court before Judge Owen — with whom she has an ongoing professional relationship through those appearances — creates an appearance of bias that undermines the integrity of those proceedings. Her coordinated absence with Owen on the identical dates documented in this complaint is not coincidental — it reflects an ongoing professional relationship between opposing counsel and the presiding judge that predates and explains the coordinated obstruction.

**COUNT XII — OFFICIAL MISCONDUCT (IC 35-44.1-1-1)**

82. 77. Plaintiff incorporates all preceding paragraphs. Defendants Tucker Fullen, Owen, Hubbard, Duckett, and the Sheriff committed acts constituting official misconduct by knowingly performing acts they were not authorized to perform or failing to perform duties required of them.

**RELIEF REQUESTED**

Plaintiff respectfully requests that this Court:

83. 1. Award compensatory damages against all Defendants jointly and severally including: $700,000 for the underlying tort claim; $1,750 for the retaliatory impoundment; lost income and future earning capacity; past and future medical expenses; reputational damages; emotional distress; and all consequential damages from the loss of Plaintiff's government identification.

84. 2. Award punitive damages against individual Defendants for their willful, malicious, and coordinated violation of Plaintiff's constitutional rights.

85. 3. Issue a preliminary and permanent injunction directing the Orange County Clerk to accept and docket all of Plaintiff's filings without routing them to Tucker and without requiring advance payment of fees.

86. 4. Issue an order disqualifying Judge Owen and Judge Cloud from presiding over any matter involving Plaintiff.

87. 5. Order discovery into the federal grant agreement for the Log Creek Road project including all compliance reports submitted to the State of Indiana.

88. 6. Order discovery into all communications between Tucker, Owen, Lowry, and any other defendants regarding Plaintiff's case.

89. 7. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988.

90. 8. Grant such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

William Cody Fletcher, Pro Se

4112 N. County Rd 625 W, West Baden Springs, IN 47469

(812) 788-0332 | codyfletcher3@gmail.com

June 23, 2026